**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
HENRY BEASLEY,

                         Plaintiff,

                -against-

INDY MAC BANK, INDY MAC MBS,
DEUTSCHE BANK NATIONAL TRUST
COMPANY as Trustee Under the Pooling and
Servicing Agreement Series ITF INABS 2005-A,

                     Defendants.
----------------------------------------------------------X

                           **REPORT AND**
                       **RECOMMENDATION**

                 CV 16-4629 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.    PRELIMINARY STATEMENT

     *Pro Se* Plaintiff Henry Beasley ("Plaintiff") brings this action against Defendants Indy

Mac Bank, Indy Mac MBS, and Deutsche Bank National Trust Company as Trustee Under the

Pooling and Servicing Agreement Series ITF INABS 2005-A (collectively, "Defendants"),

alleging fraud, fraudulent inducement, and violations of the Truth In Lending Act, 15 U.S.C.

§§ 1601 *et seq. See generally* Plaintiff's Complaint ("Compl.") [DE 1]. Plaintiff's claims arise

out of a 2001 mortgage loan transaction between Plaintiff and Defendant Indy Mac Bank and

subsequent default and foreclosure, concerning property located at 111 Second Avenue, Bay

Shore, NY 11706. *See id.* ¶¶ 4, 5, 17. On March 9, 2017, Defendant Deutsche Bank National

Trust Company, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series INABS

2005-A, Home Equity Mortgage Loan Asset-Backed Certificates, Series INABS 2005-A

("Deutsche Bank") filed a motion to dismiss Plaintiff's Complaint, pursuant to Federal Rule of

Civil Procedure 12(b)(1) and 12(b)(6) [DE 23]. On October 12, 2017, Judge Seybert referred

Deutsche Bank's motion to dismiss to this Court for a Report and Recommendation as to whether the motion should be granted. *See* October 12, 2017 Electronic Order. For the reasons which follow, the Court respectfully recommends to Judge Seybert that Deutsche Bank's motion to dismiss be GRANTED.

## II.    BACKGROUND

### A.    Plaintiff's Complaint

The following factual allegations have been taken from Plaintiff's Complaint. All facts alleged by the Plaintiff are assumed to be true for purposes of deciding the motion to dismiss and are construed in a light most favorable to Plaintiff as the non-moving party. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012).

In his Complaint, Plaintiff raises four claims related to the 2001 home mortgage loan transaction to purchase property located at 111 Second Avenue, Bay Shore, NY 11706. *See* Compl. ¶¶ 4, 17. Specifically, Plaintiff alleges that Defendants' conduct with respect to the transaction constituted fraud and fraudulent inducement (Counts I and II, respectively), and violated the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq*. (Counts III and IV). Much of Plaintiff's Complaint concerns the roles of one or more Defendants in the 2007-08 national mortgage crisis, and specifically how the Defendants packaged, marketed, and sold their financial products. *See id.* ¶¶ 5-7, 27. With respect to his claims for fraud and fraudulent inducement, the core of Plaintiff's claims appears to be that "Defendants convinced the plaintiff that his ability to pay the mortgage granted by them was easy, within his financial means, payments would never balloon, interest rates would remain the same, and that they would work with the plaintiff in the event that his ability to pay was hampered by unemployment or ailment."

2

*Id.* ¶ 11.  Plaintiff contends that he was "fraudulently induce[d] into a mortgage loan with the defendants, that they knew and/or should have known was at risk of default by the plaintiff, which did result in default and foreclosure, in violation of the defendants own underwriting guidelines, rules, regulation [*sic*] and standards."  *Id.* ¶ 5.  When these statements were purportedly made, Plaintiff maintains, "Defendants knew at the time they made the false representations and concealed the material facts . . . that such representations were untrue and that they were concealing material facts from the plaintiff."  *Id.*  ¶ 13.  These concealed facts allegedly included "undisclosed credit risk" of the loans issued and serviced by Defendants.  *See id.*  ¶ 5.  Similarly, Plaintiff asserts that "by obtaining credit enhancement, usually by fraudulently misrepresenting the risk profile of the portfolio of mortgage loans to the credit enhancer, [Defendants] transferred economic risk of defaults on the mortgage loans."  *Id.* ¶ 7.

With respect to his claims arising under TILA, Plaintiff alleges the following: (1) Defendants failed to provide Plaintiff with a copy of the Truth-In-Lending disclosure form, Compl. ¶ 26; (2) Defendants failed to make the necessary Truth-In-Lending disclosures as required by law, *id.* ¶¶ 26, 29; (3); Plaintiff's loan and others like it were the primary reason for the toxic assets American Banks sold fraudulently and criminally to the world and "amounted to nothing more than a race based fraudulent act committed against a certain class of people, namely African American[s]," *id.* ¶ 27; and (4) specific characteristics of his loan from Defendants – namely that the loan "ballooned after a period of time," that the interest rate would cause Plaintiff and others to be "driven out of our homes," and that a co-signer would be required under certain circumstances – was fraudulently concealed from Plaintiff and others like him.  *Id.*

**B.    Relevant Procedural History**

Plaintiff filed the instant Complaint on August 10, 2016.  *See* DE 1. On February 8, 2017, Judge Seybert granted Deutsche Bank -- the only Defendant to file an appearance[1] -- leave to file a motion to dismiss without a pre-motion conference.  *See* Electronic Order of February 8, 2017. On March 9, 2017, Deutsche Bank filed its motion to dismiss.  *See* DE 23.  Plaintiff filed requests for extensions of time to respond[2] to the motion to dismiss on April 10, 2017 and again on May 25, 2017.  *See* DE 24, 30.  Both requests were granted by Judge Seybert over Deutsche Bank's opposition.  *See* April 25, 2017 Electronic Order; June 1, 2017 Electronic Order.  On July 5, 2017, Plaintiff filed his opposition to Deutsche Bank's motion.  S*ee* DE 32.  Deutsche Bank filed its reply on July 19, 2017.  *See* DE 33.  On October 12, 2017, Judge Seybert referred Deutsche Bank's motion to dismiss to this Court for a Report and Recommendation as to whether the motion should be granted.  *See* October 12, 2017 Electronic Order.

**C.    The Parties' Positions**

*1.  Deutsche Bank's Motion to Dismiss*

Deutsche Bank argues that Plaintiff's Complaint should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(1), because the Court lacks subject matter jurisdiction over the action.  Defendants further contend that, pursuant to Rule 12(b)(6), the Complaint fails to state a valid claim and must be dismissed.  *See generally* Defendant's Memorandum in Support of its

---

[1]    Deutsche Bank states it was improperly sued as Deutsche Bank National Trust Company As Trustee Under the Pooling And Services Agreement Series ITF INDABS 2005-A.  Def. Decl. in Supp., [DE 23-1] ¶ 1; Def.'s Mem. [DE 23-13] at 2.

[2]    Plaintiff's first request, DE 24, was filed as an affirmation in opposition to the motion.

Motion to Dismiss ("Def.'s Mem.") [DE 23-13]. In support of its position, Deutsche Bank raises several discrete arguments which the Court addresses below.

Initially, by way of background, Deutsche Bank states that Plaintiff entered into a mortgage loan transaction with Defendant Indy Mac Bank in 2001[3] concerning the property located at 111 Second Avenue, Bay Shore, New York 11706. Def.'s Mem. at 2. After Plaintiff's default, Deutsche Bank,[4] as Indy Mac's assignee, commenced a foreclosure action in New York State Supreme Court, Suffolk County, on July 28, 2006. *Id.* A final Judgment of Foreclosure and Sale was entered in Deutsche Bank's favor on July 18, 2007. *Id.* (citing the March 9, 2017 Declaration of Richard J. Pellicio in Support of Motion ("Pelliccio Decl.") [DE 23-1] ¶ 4; see Final Judgment of Foreclosure and Sale, annexed to the Pelliccio Decl. as Ex. C [DE 23-4]). Deustche Bank states that in order to thwart its recovery of the Property, Plaintiff filed multiple bankruptcy petitions as well as a motion before the Supreme Court, Suffolk County, to stay the foreclosure. *See* Def.'s Mem. at 2-3; Pelliccio Decl. ¶ 5. Plaintiff's motion to stay the foreclosure was denied in an Order dated August 29, 2012. Pelliccio Decl. ¶ 7. The foreclosure occurred in 2014, with Deustche Bank submitting the highest bid and obtaining title to the property by a Referee's Deed. Def.'s Mem. at 3; Pelliccio Decl. ¶ 12.

### i.  Lack of Subject Matter Jurisdiction

Deutsche Bank first argues that "[b]ecause [it] obtained a final judgment of foreclosure in 2007, this Court, pursuant to the *Rooker-Feldman* doctrine, lacks subject matter jurisdiction to hear [Plaintiff's] claims."[5] Def.'s Mem. at 3. Because (1) Plaintiff lost in state court; (2)

---

[3]    Deutsche Bank notes that Plaintiff's Complaint fails to offer the exact date of the mortgage loan transaction. Def.'s Mem. at 2.

[4]    Defendant refers to itself as the "Trust" in its motion papers.

Plaintiff complains of injuries caused by the state court judgment; (3) Plaintiff invites this Court to review and reject the state court judgment; and (4) the state court judgment was rendered before this proceeding commenced, Deustche Bank contends that the requirements for application of the *Rooker-Feldman* doctrine are met, and this Court is therefore divested of subject matter jurisdiction.  *See id.* at 4 (citing *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 164 (E.D.N.Y. 2010), *aff'd* 446 F. App'x 36 (2d Cir. 2011)).  Deutsche Bank also notes that the *Rooker-Feldman* doctrine bars federal courts from exercising jurisdiction over claims that are "inextricably intertwined" with state court determinations.  Def.'s Mem. at 4.  A review of the Complaint, Defendant argues, shows that "at a minimum, [Plaintiff's] claims here in are 'inextricably intertwined' with the Foreclosure Action because he had an opportunity to litigate the fraud and [Truth In Lending Act] claims asserted herein as counterclaims in the state court action."  *Id.* at 5.

### ii.  Res Judicata

Deutsche Bank next argues that the doctrine of *res judicata* prevents Plaintiff from raising each of his claims, since "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action."  Def.'s Mem. at 5 (quoting *Boguslavsky v. South Richmond Sec., Inc.*, 225 F.3d 127, 130 (2d Cir.

---

[5]    In *Rooker v. Fidelity Trust Co.,* 265 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983), the Supreme Court held that a federal district court does not have the authority to review final judgments of a state court judicial proceeding, except for general constitutional challenges and reviews pursuant to a writ of *habeas corpus*.  *See, e.g., Rooker,* 265 U.S. at 416 (holding that "[t]o do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original."); *Feldman,* 460 U.S. at 482 ("a United States District Court has no authority to review final judgments of a state court in judicial proceedings").

2000)).  Because each of Plaintiff's claims arises out of the 2001 mortgage loan transaction, Deutsche Bank maintains that the Plaintiff could have raised them in the state court proceeding, and he is now precluded from doing so.  Def.'s Mem. at 5-6.

### iii.  Timeliness

Deutsche Bank also argues that Plaintiff's claims for fraud and fraudulent inducement (Counts I and II, respectively) are time-barred.  Pointing to N.Y. C.P.L.R. § 213(8), which states that an action for fraud must be brought within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it," Deutsche Bank contends that Counts I and II of Plaintiff's Complaint should be dismissed as untimely.  *See* Def.'s Mem. at 7.

With regard to Plaintiff's claims alleging violations of TILA (Counts III and IV), Deutsche Bank observes that "[t]he statute of limitations for a private action for damages under TILA is one year."  Def.'s Mem. at 8 (quoting *Feliciano v. U.S. Bank Nat. Ass'n*, No. 13 Civ. 5555, 2014 WL 2945798, at *5 (S.D.N.Y. June 27, 2014)).  Because Plaintiff seeks damages for alleged violations of TILA which occurred in 2001, Deutsche Bank asserts that Plaintiff's Truth In Lending claims are untimely and must be dismissed.  *See* Def.'s Mem. at 8.

### iv.  Failure to Plead Fraud with Particularity

Deutsche Bank next claims that Plaintiff's Complaint fails to plead fraud with particularity in accordance with Federal Rule of Civil Procedure 9(b).  *See* Def.'s Mem. at 7. According to Deutsche Bank, Plaintiff

> does not identify the individuals who made the alleged misrepresentations.  He does not precisely identify the allegedly false statements.  He does not state precisely when the alleged misrepresentations were made.  He does not state precisely when and how he allegedly relied upon these representations and changed his position, *etc.* . . . Furthermore, he fails to identify precisely which

> Defendant made which alleged misrepresentation. Instead, he avers, in a conclusory manner: "Defendants convinced Plaintiff that his ability to pay the mortgage granted by them was easy . . . ."

*Id.* (quoting Compl. ¶ 11). For this reason, Deutsche Bank argues, Counts I and II of Plaintiff's Complaint should be dismissed. Def.'s Mem. at 7.

### v. Failure to Plead Reliance or Ability to Repay

Lastly, Deutsche Bank argues that Plaintiff's TILA claims must be dismissed because (1) the Complaint does not establish a right to actual damages; and (2) the Complaint does not indicate that Plaintiff can repay the original loan. Def.'s Mem. at 9. In order to receive actual damages for a violation of TILA, Deutsche Bank contends that "a plaintiff must demonstrate detrimental reliance upon inaccurate or incomplete disclosure. *Gold Country Lenders v. Smith*, 289 F.3d 1155, 1157 (9th Cir. 2002). Plaintiff does not even plead any such reliance, nor can he." Def.'s Mem. at 9. Similarly, "[a]lthough [Plaintiff] does not plead a rescission claim and although any such claim would be time-barred and unsupported by evidence . . . . [Plaintiff] must be able to tender the loan proceeds that he received back to the lender; the equitable goal of the remedy of rescission under TILA is to restore the parties to the status quo ante." *Id.* (citing *American Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007); *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003)). Because Plaintiff has not alleged he is ready or able to make the lender whole, Deutsche Bank's argument goes, any rescission claim Plaintiff might make should be dismissed. *See* Def.'s Mem. at 9.

### 2. *Plaintiff's Opposition*

In opposing the motion, Plaintiff asserts that "[t]here was no documentation in the defendant's motion that I was ever served a Notice of Eviction by the Suffolk County Sheriff's Department to vacate my premises of 111 2nd Avenue, as owner." Plaintiff's Memorandum in

8

Opposition ("Pl.'s Opp'n.") [DE 32]. Plaintiff also states that "Indy Mac Bank has a pending fraudulent class action lawsuit for knowingly and unknowingly committing fraudulent acts undermining mortgage holders."[6] *Id.*

### 3. *Deutsche Bank's Reply*

In a brief reply memorandum, Deutsche Bank contends that Plaintiff fails to address any of the points raised in the moving papers, and "does not provide a single basis for denying the Motion." Defendants Memorandum in Reply ("Def.'s Reply") [DE 33] at 2.

## III.   DISCUSSION

At the outset, the Court notes that *pro se* filings are to be liberally construed. *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664, at *3 (E.D.N.Y. Dec. 31, 2014). As such, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 890 (2d Cir.1994)).

### A.   Lack of Subject Matter Jurisdiction Under FED. R. CIV. P. 12(b)(1)

#### 1. *Standard of Review*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)). Similar to the

---

[6]     Plaintiff includes as an Exhibit to his opposition a 2008 article from CNNMoney.com, regarding the federal seizure of Indy Mac. *See* Pl.'s Opp'n. [DE 32], Ex. A.

resolution of a motion to dismiss under Rule 12(b)(6), "[w]hen considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.  Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004) (citing *Sec. Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 68 (2d Cir.2000)) (internal citation omitted); *see Davis v. JP Morgan Chase Bank*, No. 14-CV-6263, 2016 WL 1267800, at *3 (S.D.N.Y. Mar. 30, 2016) ("The standard of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical.").  Unlike the resolution of a Rule 12(b)(6) motion to dismiss, however, a court resolving a Rule 12(b)(1) motion to dismiss may refer to evidence outside the pleadings.  *Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986)).  Importantly, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996)); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

Where, as in the instant case, a defendant moves for dismissal under Rule 12(b)(1) as well as on other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined."  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F. 2d 674, 678 (2d Cir. 1990) (quoting 5 C. Wright and A. Miller,

*Federal Practice and Procedure,* § 1350, p. 548 (1969)); *Thompson v. Ocwen Fin. Corp.*, No. 3:16-cv-01606, 2018 WL 513720, at *2 (D. Conn. Jan. 23, 2018) (noting it is well established that "federal courts should ordinarily resolve any doubts about the existence of federal subject matter jurisdiction prior to considering the merits of a complaint") (citing *Rhulen*, 896 F. 2d at 678); *Calverton Hills Homeowners Assn., Inc. v. Nugent Bldg. Corp*., 2:17 cv-03916, 2017 WL 6598520, at *4 (E.D.N.Y. Dec. 26, 2017) (same).

## 2. *Application to Plaintiff's Complaint*

### i. *Rooker-Feldman* **Doctrine**

As outlined above, Deutsche Bank argues that the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction to entertain Plaintiff's claims. *See* Def.'s Mem. at 3-5. The *Rooker-Feldman* doctrine stands for "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock*, 422 F.3d at 84. Prior to 2005, federal courts had struggled to define *Rooker-Feldman*'s reach, with some courts applying the doctrine expansively, including the Second Circuit. *See id.* In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Supreme Court "pared back the *Rooker-Feldman* doctrine to its core," *Hoblock*, 422 F.3d at 85, holding that the doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp*., 544 U.S. at 284. The Court made clear that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Id.*

Shortly after the Supreme Court's determination in *Exxon Mobil Corp.*, the Second

Circuit grappled with the implications of that decision in *Hoblock v. Albany Cty. Bd. of*

*Elections*, 422 F.3d at 85.  In *Hoblock,* the Second Circuit distilled four requirements that must

be satisfied before a district court can properly apply the *Rooker-Feldman* doctrine: (1) the

federal court plaintiff must have lost in state court; (2) the federal plaintiff must complain of

injuries caused by a state court judgment; (3) the federal plaintiff must invite district court

review and rejection of the state court judgment; and (4) the state court judgment must have been

rendered before the district court proceedings commenced.  *Id.*; *see MacPherson v. Town of*

*Southampton*, 738 F. Supp. 2d 353, 362 (E.D.N.Y. 2010).  "The first and fourth requirements are

procedural, whereas the second and third are substantive.  If all four requirements are met,

federal subject matter jurisdiction is barred by *Rooker-Feldman.*"  *MacPherson*, 738 F. Supp. 2d

at 362 (citing *Hoblock*, 422 F.3d at 85).  The Court will address each of the four requirements in

the context of Plaintiff's Complaint.

### a.  *First and Fourth Requirements*

In order for the *Rooker-Feldman* doctrine to apply, a plaintiff must have suffered a loss in

a state court proceeding, and the state court judgment must have been rendered before the district

court proceeding commenced.  *See Hoblock*, 422 F.3d at 85.  In the instant action, Plaintiff states

that he defaulted on his home mortgage loan, resulting in foreclosure.  *See* Compl. ¶ 5.  A copy

of the March 29, 2007 Judgment of Foreclosure and Sale of the property located at 111 Second

Avenue, Bay Shore, NY 11706, issued by the New York Supreme Court, County of Nassau, is

annexed to the Pelliccio Declaration as Exhibit C.  These materials show that the first

requirement of *Rooker-Feldman* is satisfied because the Plaintiff suffered a loss in a state court

proceeding.  Moreover, since the instant federal proceeding did not commence until August

2016, over nine years after the state court foreclosure judgment issued, *see generally* Compl., the

fourth *Rooker-Feldman* requirement is also satisfied.

### b.   Second and Third Requirements

In order for *Rooker-Feldman* to apply here to divest this Court of subject matter

jurisdiction, however, Plaintiff also must complain of an injury caused by the state court

judgment, and invite federal court review of that judgment.  Indeed, the Second Circuit explained

that the requirement that a plaintiff's injuries be caused by the state court judgment is the "core

requirement" of the *Rooker-Feldman* doctrine.  *Hoblock*, 422 F.3d at 85.  In *Hoblock*, the Second

Circuit undertook an in-depth examination of this requirement.  In pointing out the difficulty in

correctly identifying circumstances that satisfy this requirement,[7] the Court of Appeals explained

---

[7]     The Second Circuit illustrated why a federal plaintiff cannot escape *Rooker-Feldman* simply by relying on a legal theory not raised in state court:

> [s]uppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

*Hoblock*, 422 F.3d at 87.  Conversely, the court went on to explain that a suit asking a federal court to deny a legal conclusion reached by a state court could nonetheless be independent for *Rooker-Feldman* purposes:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent

that "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."  *Id.* at 88; *see McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007) ("What *Exxon Mobil* and *Hoblock* do make clear is that the applicability of the *Rooker-Feldman* doctrine turns not on the similarity between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court.").  Given this framework, it is no surprise that "[c]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* [d]octrine."  *Davis*, 2016 WL 1267800, at *6 (quoting *Webster v. Wells Fargo Bank, N.A.*, No. 08-CV-10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009)).

In the instant action, the conduct underlying Plaintiff's claims for fraud, fraudulent inducement, and violations of TILA is causally linked to the foreclosure proceeding and judgment.  However, a liberal reading of Plaintiff's *pro se* Complaint indicates that it is this underlying alleged conduct – the alleged misrepresentations and failures to disclose related to the mortgage loan's origination, servicing, and securitization, *see, e.g.* Compl. ¶¶ 4, 5, 7, 11, 26-27 – for which Plaintiff seeks redress, rather than the state court judgment itself.[8]  The state court

_____

federal suit on the same matter into an appeal, forbidden by *Rooker–Feldman*, of the state-court judgment.

*Id*. at 87-88.

[8]     This Court notes that a similar set of circumstances was addressed in *Webster v. Wells Fargo Bank, N.A.*, 2009 WL 5178654, at *5.  There the district court for the Southern District of New York determined that, although alleging claims sounding in fraud related to a mortgage foreclosure, plaintiffs' claims were barred by *Rooker-Feldman* because "the harm they consistently identify is the judgment permitting foreclosure to take place."  *Id*.  This Court finds

judgment and alleged conduct forming the basis for Plaintiff's claims are therefore independent and separate from one another, precluding application of *Rooker-Feldman*.[9]  *See Davis*, 2016 WL 1267800, at *8 (finding *Rooker-Feldman* did not apply to preclude jurisdiction over a fraud claim where the complaint alleged "Defendants [were] liable for fraud because they repeatedly sent Plaintiffs collection notices and letters and also called Plaintiffs several times daily 'to induce Plaintiffs to pay money to Defendant[s],'" because the "fraud claim complains of injuries allegedly caused by Defendants that are wholly apart from the state court's foreclosure judgment"); *Holmes v. Caliber Home Loans, Inc.*, No. 16-CV-3344, 2017 WL 3267766, at *7 (S.D.N.Y. July 31, 2017) ("'[T]o the extent [Plaintiff's] pro se complaint can be liberally construed as asserting fraud claims . . . seek[ing] damages . . . for injuries [Plaintiff] suffered from [Defendants'] alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment,' such claims 'are not barred by *Rooker-Feldman*.'") (quoting *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 425 (2d Cir. 2014)) (italics omitted) (alteration in original); *see also Gonzalez v. Deutsche Bank Nat. Tr. Co.*, 632 Fed.

---

the instant Complaint distinguishable from that addressed in *Webster*, and Plaintiff has sufficiently alleged circumstances separate from the underlying state foreclosure judgment. Plaintiff only mentions the foreclosure twice in his Complaint.  *See* Compl. ¶¶ 5, 27.  While the Complaint fails to state a claim for several reasons, as discussed below, the Court does not find that *Rooker-Feldman* deprives it of subject matter jurisdiction under the logic enunciated in *Webster*.

[9]      Deutsche Bank argues that, "at a minimum, [Plaintiff's] claims . . . are 'inextricably intertwined' with the Foreclosure Action because [Plaintiff] had an opportunity to litigate the fraud and TILA claims asserted herein as counterclaims in the state court action."  Def.'s Mem. at 5.  The Court observes that in *Hoblock*, the Second Circuit took care to note that "[t]he 'inextricably intertwined' language from *Feldman* led lower federal courts, including this court in [*Moccio v. New York State Office of Court. Admin*, 95 F.3d 195 (2d Cir. 1996)] to apply *Rooker-Feldman* too broadly."  *Hoblock*, 422 F.3d at 86.  The Second Circuit concluded that "the phrase 'inextricably intertwined' has no independent content.  It is simply a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil*."  *Id.* at 87.

App'x 32, 34 (2d Cir. 2016) ("To the extent plaintiffs' complaint can be liberally construed to allege injury stemming from the same transaction but not directly caused by the foreclosure judgment, their claims are not barred by *Rooker-Feldman*."); *cf Quiroz v. U.S. Bank Nat. Ass'n*, No. 10-CV-2485, 2011 WL 2471733, at *5 (E.D.N.Y. May 16, 2011), *report and recommendation adopted*, No. 10-CV-2485, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011) (finding the second *Rooker-Feldman* requirement *was* satisfied where plaintiffs explicitly complained of procedural decisions made by the state court during foreclosure proceedings); *Gray v. Americredit Fin. Servs., Inc.,* No. 07 CIV. 4039, 2009 WL 1787710, at *1 (S.D.N.Y. June 23, 2009) (finding *Rooker-Feldman* bared claims where plaintiff explicitly sought to have a federal court review and reverse a state court foreclosure decision).  Further, "to the extent that [Plaintiff's Complaint] can be read to allege fraud in the origination of the [home mortgage loan], . . . any injury from that conduct 'existed *prior* in time to the state-court proceedings, and so could not have been "caused by" those proceedings.'"  *Davis*, 2016 WL 1267800, at *8 (quoting *McKithen*, 481 F.3d at 98).

Because the second and third requirements of *Rooker-Feldman* are not satisfied, the doctrine does not preclude this Court's exercise of subject matter jurisdiction over Plaintiff's four claims.  However, this does not end the discussion and the Court now turns to the motion to dismiss as asserted under Rule 12(b)(6).

**B.     Failure to State a Claim Under FED. R. CIV. P. 12(b)(6)**

**1.   *Standard of Review***

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co.,*

*L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom*. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint.[10]  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

---

[10]     Deutsche Bank has submitted with its motion, in addition to a memorandum of law, a declaration in support to which exhibits are attached containing supplemental materials.  *See* DE 23-1 to 14.  Mindful that where a party moves pursuant to Rule 12(b)(6) and "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," FED. R. CIV. P. 12(d); *see Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887, 2007 WL 952069, at *5 (E.D.N.Y. Mar. 29, 2007), the Court does not find conversion to be required after having reviewed the Complaint in conjunction with these materials.  Rather, the Court finds that the materials encompassed within Deutsche Bank's moving papers, because they pertain to the underlying state court foreclosure proceeding or the several bankruptcy petitions filed by Plaintiff concerning the same property, are either incorporated in the Complaint by reference or are rendered "integral" to the Complaint.  *See*

### 2. Application to Plaintiff's Complaint

Deutsche Bank moves to dismiss Plaintiff's Complaint on the grounds that (1) Plaintiff's claims are bared by the doctrine of *res judicata*; (2) Plaintiff's claims are time-barred; and (3) Plaintiff's claims each suffer from a fatal pleading deficiency. The Court now addresses each of these arguments in turn.

### i. Res Judicata

"The preclusive effect of a New York judgment in a subsequent federal action is determined by New York law." *Gray*, 2009 WL 1787710, at *5 (quoting *Ponterio v. Kaye*, No. 06 Civ. 6289, 2007 WL 141053, at *6 (S.D.N.Y. Jan. 22, 2007)). New York law "requires an identity of issues and identity of parties for *res judicata* to apply, and adheres to a broad transactional analysis. Thus, a later claim which arises from the same transaction or series of transactions will be barred even if the later claim is based on different legal theories or seeks additional relief." *Gray*, 2009 WL 1787710 at *5 (citing *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir.1997); *see Ruiz v. Comm'r of Dep't of Transp*. of City of New York, 858 F.2d 898, 902 (2d Cir.1988)). "[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata." *Berlitz Schools of Languages of America, Inc. v. Everest House*, 619 F.2d 211,

---

*Chambers v. Time Warner, Inc*., 282 F.3d 147, 152-53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014). As such, the Court exercises its discretion to consider these documents in analyzing the motion to dismiss, to the extent such documents bear upon the proper adjudication of the motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Acquest Holdings, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 1:16-CV-00212, 2016 WL 6635159, at *4 (W.D.N.Y. Nov. 3, 2016).

In addition, as noted *supra*, Plaintiff has also submitted supporting documentation as an Exhibit to his papers, consisting of a 2008 article from CNNMoney.com regarding the federal seizure of Indy Mac. *See* Pl. Mem. in Opp. at Ex. A. As this document does not concern Plaintiff or directly bear on the instant action, the Court in its discretion declines to consider it.

215 (2d Cir.1980).  Based on the foregoing factors, *res judicata* will preclude a claim from being raised where (1) a previous action involved an adjudication on the merits; (2) the previous action involved the parties in the subsequent action or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.  *Streit v. Amdocs, Inc.*, 307 Fed. App'x 505, 509 (2d Cir. 2009).

Plaintiff's claims are barred by the doctrine of *res judicata* since each of the three requirements cited above are satisfied.  First, the prior state foreclosure action in New York State Supreme Court, Suffolk County, Index No. 20243/06, was adjudicated on the merits and resulted in a Judgment of Foreclosure and Sale.  *See* Pelliccio Decl., Ex. C.  Next, the foreclosure action involved Henry Beasley as a defendant and Deutsche Bank National Trust Company as plaintiff Trustee Under the Pooling and Servicing Agreement Series ITF INABS 2005-A, as Indy Mac's assignee.  *See id.*  Because the same parties are involved in both the previous state and instant federal actions, albeit on opposite sides of the "v," the second requirement for *res judicata* is satisfied.  Finally, since each of Plaintiff's four claims in the instant action arise from conduct concerning the origination of, servicing of, and default on Plaintiff's home mortgage loan, "both the state court litigation and this case arise from the same transaction[s]."  *Gray*, 2009 WL 1787710 at *6.  As such, Plaintiff could have raised his claims for fraud, fraudulent inducement, and violations of TILA in the state court proceeding.  *See Streit*, 307 Fed. App'x at 509 ("[W]hether a claim that was not raised in the previous action could have been raised therein depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims.") (quoting *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir.2001)).

Because (1) the state court foreclosure action was adjudicated on the merits; and (2) the state court foreclosure action and the instant action involve the same parties; and (3) Plaintiff's instant claims arise out of the same transactions which gave rise to the state court foreclosure action, *res judicata* precludes the consideration of Plaintiff's claims here.

### ii. Timeliness

Even if Plaintiff's claims were not precluded by the doctrine of *res judicata*, each of the four claims is time-barred, for the reasons that follow.

### a. Counts I and II: Fraud and Fraudulent Inducement

To be timely, Plaintiff's claims for both fraud and fraudulent inducement must have been brought within six years from the execution of Plaintiff's home mortgage loan agreement, or two years from the time Plaintiff discovered or could have reasonably discovered the alleged fraud. *See* N.Y. C.P.L.R. § 213(8) (McKinney 2004); *see also Certain Underwriters at Lloyd's v. Milberg LLP*, No. 08 CIV. 7522, 2009 WL 3241489, at *5 (S.D.N.Y. Sept. 30, 2009) (citing *Ply*Gem of Laurel, Inc. v. Lee,* 456 N.Y.S.2d 382, 383 (1st Dep't 1982) ("A cause of action for fraud in the inducement of a contract (and therefore the commencement of the running of the [s]tatute of [l]imitations) accrues at the time of the execution of the contract.").  Even giving Plaintiff every benefit of the doubt, and assuming *arguendo* he could not have discovered any alleged fraud until his property was actually foreclosed on, the instant action was commenced in mid-2016 -- approximately nine years after entry of the state court judgment of foreclosure and approximately 15 years after Plaintiff's mortgage loan transaction.  Plaintiff's fraud and fraudulent inducement claims are consequently untimely.

### b.   Counts III and IV: TILA Violations

The crux of the claims raised in Counts III and IV appears to be that "Defendants failed to make the necessary Truth-In-Lending disclosures as required by law," Compl. ¶ 26, and that "Defendants failed to provide the plaintiff with any of the protections set forth in 15 USCA 1639." *Id.* ¶ 30.  "The statute of limitations for a private action for damages under [TILA] is one year." *Feliciano*, 2014 WL 2945798, at *5 (citing *Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 285 (S.D.N.Y. 2011); *see* 15 U.S.C. § 1640(e).  Because the instant action was not commenced until mid-2016, nine years after entry of the foreclosure judgment and approximately 15 years after execution of the mortgage loan agreement, Plaintiff's claims arising under TILA are untimely.

### iii.   Pleading Deficiencies

Deutsche Bank also argues that Plaintiff's claims each suffer from a fatal deficiency, namely, that (1) the fraud and fraudulent inducement claims are not pleaded with particularity, *see* Def.'s Mem. at 7, and (2) Plaintiff's TILA claims fail to plead detrimental reliance.  *Id.* at 9. The Court now turns to these arguments.

### a.   Lack of Particularity

The Second Circuit has explained that Federal Rule of Civil Procedure 9(b) requires a plaintiff pleading a fraud claim to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Sanders v. WB Kirby Hill LLC*, No. CV 16-4596, 2017 WL 5495365, at *3 (E.D.N.Y. Nov. 14, 2017) (quoting *Nakahata v. New York-Presbyterian Healthcare Sys.,* 723 F.3d 192, 197 (2d Cir. 2013)); *see* FED. R. CIV. P. 9(b).  Even giving Plaintiff's Complaint the liberal construction it is due, Plaintiff has failed to meet this

pleading requirement.  Plaintiff's Complaint lacks any specific allegations regarding statements made, dates, or representatives of Defendants with whom Plaintiff allegedly interacted.  Simply put, Plaintiff's Complaint is too generalized and conclusory to sufficiently state a claim for fraud or fraudulent inducement.

### b. Reliance

Detrimental reliance is a necessary element to establish actual damages for a violation of TILA.  *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 428 (S.D.N.Y. 2003) ("This Court . . . declines to deviate from the rule requiring detrimental reliance for a claim of actual damages under [the Truth In Lending Act]."); *Montanez v. D & D Auto, LLC*, No. 3:15-CV-397, 2016 WL 1254199, at *5 (D. Conn. Mar. 29, 2016).  Although Plaintiff does not use the word "reliance" or any variation of it in his Complaint, a fair and liberal reading of the Complaint shows that Plaintiff is attempting to allege, albeit in a very generalized manner, that he relied on Defendants' misrepresentations and was harmed as a result.  *See, e.g. Compl.* ¶ 11 ("Defendants convinced the plaintiff that his ability to pay the mortgage granted by them was easy . . . .").  Notwithstanding this attempt, since the Plaintiff has not pleaded the claims at issue with particularity, thus warranting their dismissal, the Court need not reach a determination about the sufficiency of Plaintiff's pleadings with respect to detrimental reliance.[11]

## IV. CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that Deutsche Bank's motion to dismiss be GRANTED.

---

[11]    Similarly, while Deutsche Bank argues that Plaintiff is not able to plead a rescission claim because he has not pleaded that he is able to repay the loan, *see* Def.'s Mem. at 9, since Plaintiff does not raise a claim for rescission, the Court declines to address the issue.

## V.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


**Defendant's counsel is directed to serve a copy of this Report and Recommendation upon the pro se Plaintiff forthwith by overnight mail and first-class mail and to file proof of such service promptly on ECF**.


SO ORDERED.

Dated: Central Islip, New York
       February 23, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge